IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

GEORGIA TORKIE-TORK, )
    Plaintiff, )
     )
    v. ) No. 1:04cv945
     )
WYETH, )
    Defendant. )

## MEMORANDUM OPINION

At issue in this removed diversity product liability action is whether judgment for defendant is warranted because the undisputed record reflects that plaintiff's claims are untimely. More specifically, defendant argues that this suit is time-barred because all of the claims accrued beyond Virginia's two-year limitations period for personal injury suits. Plaintiff contends that the suit was timely filed because (i) the limitations period did not begin to run until she discovered that defendant's product may have caused her injury, (ii) the limitations period for her fraud claim is subject to a so-called "discovery rule," even if the rest of her claims are not, and (iii) the limitations period was tolled by the filing of a federal class action suit of which plaintiff was a putative, unnamed class member. Because the matter has been fully briefed, and the facts and legal arguments are adequately set out in the existing record, oral argument is dispensed with as it would not aid the decisional process. Accordingly, the matter is now ripe for disposition.

I.[1]

Plaintiff, Georgia Torkie-Tork, is a citizen of Virginia. Defendant, Wyeth, is a Delaware corporation with its principal place of business in New Jersey. During times relevant to this

---

[1] The facts described herein are derived from the parties' pleadings and the record taken as a whole, and are not materially disputed.

litigation, defendant was one of the world's largest pharmaceutical companies[2] and the maker of Prempro, an FDA-approved hormone therapy drug that contains a combination of estrogens and a progestin, and is indicated for treatment of menopausal symptoms.

Beginning in or about 1996, plaintiff began experiencing severe menopausal symptoms. Her then-physician, Dr. Joel Schulman, prescribed Prempro for treatment of those symptoms. The Prempro proved effective, and she continued the treatment until June 2002, when an abnormality was noted on her annual mammogram. At the direction of her physician, Dr. Ronald Orleans, she immediately discontinued her Prempro treatment, and a follow-up sonogram and needle biopsy were performed. Based on the results of these procedures, plaintiff was diagnosed with breast cancer on June 18, 2002. She underwent a partial mastectomy on June 27, 2002 to remove the cancerous tissue. A pathology report signed on July 3, 2002 confirmed that the cancer was hormone receptor positive, meaning that the cancer was of a type caused by hormones such as those contained in Prempro. A surgical procedure on July 24, 2002 confirmed that the June 27, 2002 mastectomy had removed all cancerous tissue. The cancer has not recurred.

Plaintiff filed the instant action in state court on July 2, 2004, and it was removed to this district on August 13, 2004. In her complaint, plaintiff alleges that defendant is liable for the personal injury that she suffered—namely, breast cancer—as a result of her as-prescribed use of defendant's pharmaceutical product—namely, Prempro. The theories of liability that she asserts are (i) negligence, (ii) defective design, (iii) failure to warn, (iv) breach of express warranty, (v) negligent misrepresentation, and (vi) fraud.

Because numerous suits of this nature were filed, the Judicial Panel on Multidistrict

---

[2] Since this suit was filed, defendant has been purchased by Pfizer Incorporated.

Litigation convened multidistrict litigation ("MDL") proceedings in the Eastern District of Arkansas, and this matter was transferred to that district for participation in the MDL proceedings. *See Torkie-Tork v. Wyeth*, No. 1:04cv945 (E.D. Va. Nov. 1, 2004) (conditional transfer order). At the conclusion of the MDL proceedings, by Order dated April 8, 2010, the matter was returned to this Court for all further proceedings, including case-specific discovery, summary judgment, and, if necessary, a trial. *See Torkie-Tork v. Wyeth*, No. 1:04cv945 (E.D. Va. Apr. 8, 2010) (conditional remand order).

On May 14, 2010, defendant filed a motion for summary judgment on the ground that plaintiff's claims are barred by the applicable statute of limitations. More specifically, defendant contends that judgment is warranted on the basis of the undisputed factual record as the asserted claims did not accrue within two years of filing as required by the Virginia statute governing personal injury actions. *See* Va. Code § 8.01-243(A). Plaintiff disagrees, arguing (i) that the limitations period did not begin to run until plaintiff discovered that Prempro may have caused her injury, (ii) that her fraud claim is subject to the discovery rule and thus that claim was timely filed, and (iii) that a federal class action suit comprised of class members who suffered physical injury as a result of Prempro use tolled the Virginia limitations statute for purposes of this action. For the reasons that follow, the motion for summary judgment must be denied.

## II.

The summary judgment standard is too well-settled to require elaboration here. In essence, summary judgment is appropriate under Rule 56, Fed. R. Civ. P., only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[3] Importantly, to defeat summary judgment the non-moving party may not rest upon a "mere scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Thus, the party with the burden of proof on an issue cannot prevail at summary judgment on that issue unless he or she adduces evidence that would be sufficient, if believed, to carry the burden of proof on that issue at trial. *See Celotex*, 477 U.S. at 322.

### III.

The statute of limitations analysis properly begins with the threshold choice of law issue. In a diversity suit such as this one, the forum state's choice of law rules govern the determination. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 110–11 (1945); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). And in Virginia, it is well settled that the forum state's statute of limitations controls, not that of the place of the alleged wrong. *See Hospelhorn v. Corbin*, 19 S.E.2d 72, 73 (Va. 1942). Thus, Virginia's limitations period applies to this action. Under Virginia law, a defendant has the burden of proof on a statute of limitations defense,[4] and to this end, defendant argues that the Virginia statute governing the limitations period for personal injury actions bars this suit. In this respect, Virginia Code § 8.01-243(A) provides as follows:

> Unless otherwise provided in this section or by other statute, every action for personal injuries, whatever the theory of recovery, and every action for damages

---

[3] It is worth noting, notwithstanding plaintiff's assertion that summary judgment is a "drastic and disfavored remedy," Pl. Opp. at 3, that the Supreme Court has held to the contrary, noting that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex*, 477 U.S. at 327.

[4] *See Lo v. Burke*, 455 S.E.2d 9, 12 (Va. 1995).

resulting from fraud, shall be brought within two years after the cause of action accrues.

Thus, Virginia law requires all personal injury suits—and all fraud claims for damages—to be brought within two years of the cause of action's accrual. All of the claims in this action are indisputably governed by § 8.01-243.[5] Thus, the next step in the analysis is to determine when, under Virginia law, the causes of action "accrue[d]." *Id.* Separate provisions of the Virginia Code define (i) accrual for claims other than fraud and (ii) for claims alleging fraud. Accordingly, these two categories of claims are separately addressed.

### A. Negligence, Product Liability, and Breach of Warranty Claims

With respect to the non-fraud claims, the inquiry is guided by Va. Code § 8.01-230, which makes clear that except where otherwise provided, accrual occurs, and the statute of limitations begins to run, on "the date the injury is sustained . . . and not when the resulting damage is discovered." Va. Code § 8.01-230. It follows that the relevant date for purposes of the non-fraud claims in this case is the date on which plaintiff's injury—her breast cancer—was sustained. *See Locke v. Johns-Manville Corp.*, 275 S.E.2d 900, 904 (Va. 1981) (construing Va. Code § 8.01-230 and -243) ("[T]he running of the time is tied to the fact of harm to the plaintiff."). In other words, absent tolling, plaintiff's suit is time-barred if the onset of her breast cancer occurred more than two years prior to the July 2, 2004 filing date.

The undisputed factual record conclusively shows that plaintiff's injury occurred on or before June 18, 2002, and thus, for summary judgment purposes, that is the date by which the

---

[5] *See Friedman v. Peoples Service Drug Stores, Inc.*, 160 S.E.2d 563, 565 (Va. 1968) (applying personal injury statute of limitations to breach of contract claim where gravamen of suit was personal injury for a pharmacists's alleged negligence in improperly filling a prescription).

limitations period began to run for the non-fraud claims. Specifically, the record reflects that plaintiff was diagnosed with breast cancer on June 18, 2002.[6] Accordingly, the injury allegedly caused by her Prempro use must have occurred at least by that date.[7] In response, plaintiff notes that her breast cancer was not determined to be *hormone receptor positive* breast cancer until July 3, 2002, when a lab test was performed on the removed cancerous tissue. Thus, although plaintiff acknowledges she knew she had breast cancer at the time of her diagnosis on June 18, 2002, she nonetheless contends that she did not know—and could not have known—that she had suffered a type of cancer potentially caused by the hormones contained in Prempro until the later date. Yet, assuming, *arguendo*, the truth of this assertion, it is irrelevant to the statute of limitations analysis because Virginia, unlike some states, does not adhere to a so-called "discovery rule" for claims other than fraud.[8] Put differently, in a personal injury action alleging claims other than fraud, it does not matter when a plaintiff discovered—or reasonably could have

---

[6] *See* Def. Ex. 5 (cancer-positive biopsy report dated June 18, 2002).

[7] It is worth noting that, at least in some cases, the date of diagnosis effectively becomes the date of injury for accrual purposes, as it may be impossible to determine precisely when the injury occurred. In this sense, although Virginia is among the minority of states not to apply a discovery rule in personal injury cases, the distinction is sometimes one that ultimately makes no difference in the analysis.

[8] Plaintiff's contention to the contrary ignores the Supreme Court of Virginia's repeated rejection of the discovery rule. *See Comptroller of Va. ex rel. Va. Military Inst. v. King*, 232 S.E.2d 895, 900 (Va. 1977) (rejecting discovery rule and holding that clock begins at time of injury); *Hawks v. DeHart*, 146 S.E.2d 187, 189 (Va. 1966) (same); *Housing Auth. v. Laburnum Corp.*, 80 S.E.2d 574, 580-81 (Va. 1954) (same); *Street v. Consumers Min. Corp.*, 39 S.E.2d 271, 272 (Va. 1946) (same); *see also Nunnally v. Artis*, 492 S.E.2d 126, 129 (Va. 1997) (rejecting discovery rule but holding, in wrongful conception case, that injury occurs—and thus clock begins—at time of conception). As these cases have held, the language of § 8.01-230 makes it pellucidly clear that accrual of non-fraud claims occurs on "the date the injury is sustained."

discovered—that she was injured, or when she could have discovered that her injury was caused by the defendant's product. Rather, the only question is when the injury occurred.[9] Accordingly, June 18, 2002, and not July 3, 2002, is the date on which the limitations period began to run. As this date is more than two years prior to the filing date, unless tolled, the non-fraud claims are time-barred.

**B. Fraud Claim**

Section 8.01-230—which provides the general definition of accrual discussed above—specifically excepts from its purview claims governed by § 8.01-249, which defines accrual, *inter alia*, as follows:

> 1. In actions for fraud or mistake . . . [accrual occurs] when such fraud [or] mistake . . . is discovered or by the exercise of due diligence reasonably should have been discovered.

By its plain terms, the definition of accrual furnished by § 8.01-249 applies to fraud claims, and this definition focuses not on the date the injury occurred, but on the date the fraud was discovered or reasonably should have been discovered. Accordingly, this is the analysis that governs whether plaintiff's fraud claim was timely filed.

Defendant argues that the same two-year statute of limitations applies to all claims because plaintiff's personal injury is the gravamen of this entire suit. *See* Def. Mem. at 8. This argument misses the mark, for there is no dispute that the two-year statute of limitations prescribed by § 8.01-243 applies to this suit. The more significant question is which provision defines "accrual" for purposes of the fraud claim, § 8.01-230 or § 8.01-249. And on this issue,

---

[9] Of course, as noted, the date of diagnosis is relevant to this latter inquiry, as there can be no dispute that the injury occurred by the time it is diagnosed.

there is little doubt that § 8.01-249 governs. This is so because § 8.01-230 merely creates a general time-of-injury rule that applies to "every action," with certain enumerated exceptions including, importantly, the provision governing fraud claims, § 8.01-249. And § 8.01-249 creates the rule for fraud claims, without any exceptions, and without reference to the nature of the injury alleged or the "gravamen" or "object" of the claims. Thus, in a properly alleged fraud claim, the two-year statute of limitations prescribed by § 8.01-243 applies and the limitation period begins on the date of (i) the discovery of the fraud or (ii) the date on which the fraud reasonably should have been discovered through exercise of due diligence, whichever occurs first.

There is a genuine material factual dispute with respect to the date on which the alleged fraud was discovered or reasonably should have been discovered. The fraud allegation, distilled to its essence, is that Wyeth purposely concealed and misrepresented the risks of Prempro to doctors, consumers, and regulators. Thus, the fraud would have been discovered or reasonably should have been discovered no later than the date on which the risks of Prempro were discovered or reasonably should have been discovered. Plaintiff asserts that this date is July 9, 2002, when a major study by the Women's Health Initiative, a project of the National Institutes of Health, revealed that Prempro use may increase the risk of breast cancer.[10] Defendant does not directly address this issue, but instead claims that the warning labels on Prempro were adequate to apprise plaintiff of the risks that Prempro could cause breast cancer and therefore the fraud claim is meritless. Thus, as the currently undeveloped record is inadequate to determine, as a

---

[10] See National Institutes of Health News Release, "NHLBI Stops Trial of Estrogen Plus Progestin Due to Increased Breast Cancer Risk, Lack of Overall Benefit," July 9, 2002, *available at* http://www.nhlbi.nih.gov/new/press/02-07-09.htm.

matter of law, when plaintiff knew or reasonably should have known of the alleged fraud, summary judgment is appropriately denied on the fraud claim at this time.[11]

IV.

The final issue is undoubtedly the most significant obstacle defendant faces on the limitations issue. Plaintiff contends that the filing of a federal class action suit in the Northern District of Illinois tolled the Virginia limitations period for all claims.[12] The Fourth Circuit considered and rejected a similar equitable tolling argument in 1999, before the Supreme Court of Virginia weighed in on the cross-jurisdictional effect of Virginia's tolling statute, Va. Code § 8.01-229(E)(1). The question presented here is whether the subsequent development of the case law indicates that the Fourth Circuit, in *Wade v. Danek Medical, Inc.*, 182 F.3d 281, 287 (4th Cir. 1999), incorrectly predicted that the Supreme Court of Virginia would not allow tolling in a state court action following a federal class action suit. Because *Welding, Inc. v. Bland County Service Authority*, 541 S.E.2d 909 (Va. 2001),[13] refutes *Wade*'s rationale and holding, it is clear that the

---

[11] Nothing in this opinion, or in the result reached here, is intended to be taken, nor should be taken, to express any opinion on the merits of the fraud claim. The instant motion—filed prior to the close of case-specific discovery in this matter—is limited to the statute of limitations issue, and this ruling merely reflects that judgment as a matter of law on the fraud claim is not warranted. Defendant may, if warranted, renew its statute of limitations and merits arguments with respect to the fraud claim at the close of discovery.

[12] The Supreme Court has held that in federal question actions, the statute of limitations is equitably tolled for the duration of a class action suit, but it has not decided the issue one way or the other with respect to diversity suits. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552–53 (1974). The class action suit in issue, *Lewers v. Wyeth*, Civ. No. 02-4970 (N.D. Ill July 15, 2002) (Complaint), was filed on July 15, 2002, and voluntarily dismissed after transfer to the MDL docket on May 21, 2003. *See Lewers v. Wyeth*, No. 4-03-CV-214 (E.D. Ark. May 21, 2003) (Order).

[13] It is puzzling and worth noting that plaintiff's brief fails to mention § 8.01-229(E)(1), *Welding*, or *Shimari v. CACI Int'l, Inc.*, No. 1:08cv827, 2008 WL 7348184, at *2 (E.D. Va. Nov.

Fourth Circuit's prediction was inaccurate and the statute of limitations in this case was tolled by the previous federal class action suit.

The analysis leading to this conclusion properly begins with the relevant provision of the Virginia Code, which provides that

> if *any action* is commenced within the prescribed limitation period and *for any cause* abates or is dismissed without determining the merits, the time such action is pending shall not be computed as part of the period within which such action may be brought, and another action may be brought within the remaining period.

Va. Code § 8.01-229(E)(1) (emphases added). In *Wade*, as there was no case law on point from the courts of Virginia, the Fourth Circuit was required to engage in the somewhat speculative inquiry into whether the Supreme Court of Virginia would allow cross-jurisdictional tolling where a personal injury plaintiff was a putative but unnamed class member in a previous federal class action suit. *Wade* predicted that the Supreme Court of Virginia would not grant *equitable* tolling in these circumstances. The Fourth Circuit panel reached this conclusion essentially for three reasons: (i) because Virginia "simply has no interest, except perhaps out of comity, in furthering the efficiency and economy of the class action procedures of another jurisdiction, whether those of the federal courts or those of another state"; (ii) because adoption of a cross-jurisdictional equitable tolling rule would result in a "flood of subsequent filings once a class action in another forum is dismissed"; and (iii) because Virginia's adoption of a cross-jurisdictional tolling rule would "render the Virginia limitations period effectively dependent on

---

25, 2008), which interprets *Welding* to allow tolling based on prior federal class action suits. In other words, plaintiff does not cite any of the authority and precedent relied on here. Instead, plaintiff relies entirely on three cases from outside the jurisdiction that are barely relevant and largely unpersuasive. Defendant's counsel, who cited the Virginia tolling statute, *Welding*, and *Shimari*, are commended for complying with their ethical obligation as officers of the Court to disclose adverse legal authority. *See* Rule 3.3(a)(3), Va. R. Prof'l Conduct.

the resolution of claims in other jurisdictions, . . . [a]nd Virginia has historically resisted such dependency." *Id.* at 287–88. Thus, the Fourth Circuit concluded that the Supreme Court of Virginia "would not adopt a cross-jurisdictional equitable tolling rule." *Id.* at 287. With respect to *statutory* tolling, the opinion merely notes, as an aside in a footnote, that "Virginia does have a statute providing for tolling of the limitations period in certain other situations." *Id.* at 286 n.4. Importantly, Wade does not address the circumstances in which the tolling statute might apply.

Not long after the issuance of *Wade*, as if on cue, the Supreme Court of Virginia considered this question and ruled that § 8.01-229(E)(1) did, in fact, create a cross-jurisdictional tolling rule. The action in *Welding* was a breach of contract suit in a Virginia state court following a federal civil action in the Southern District of Western Virginia that was dismissed for improper venue by operation of a forum selection clause contained in the contract in issue. The Supreme Court of Virginia concluded that the sweeping language of § 8.01-229(E)(1) indicated that the General Assembly intended to allow tolling of prior suits arising "in both the state and federal courts." 541 S.E.2d at 912. And, the opinion further elaborates:

> There is no language in Code § 8.01-229(E)(1) which limits or restricts its application to a specific type of action or precludes its applicability to actions filed in a federal court. Accordingly, we conclude that the trial court erred in construing Code § 8.01-229(E)(1) as inapplicable to actions filed in federal courts.

*Id.* Thus, *Welding* holds that application of the tolling statute is not limited to a specific jurisdiction, to a specific type of court, or, importantly, "to a specific type of action." *Id.*

It is clear from this language and, indeed, from the language of subsection (E)(1) itself, that there is no coherent basis to distinguish the tolling statute's application to a standard federal civil suit—to which, after *Welding*, statutory tolling clearly applies—from its application to a

federal class action suit. This conclusion is further bolstered by the Supreme Court of the United States's admonition that a putative, unnamed class member in a federal class action suit should receive treatment no different from the treatment accorded a plaintiff in a traditional non-class action federal civil suit. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54 (1983); *Am. Pipe*, 414 U.S. at 550–51. Put simply, it is implausible to suggest that the General Assembly, in enacting § 8.01-229(E)(1), intended to draw a distinction between class action and non-class action federal civil suits that federal law itself does not recognize. And, moreover, it strains credulity to suggest that *Welding*'s broad holding—that the tolling statute is in no way limited to state court or to "a specific type of action"—can be reconciled with *Wade*'s prediction of how the Supreme Court of Virginia would rule on this issue. In sum, § 8.01-229(E)(1) operates to toll Virginia's statute of limitations for the time during which the plaintiff is a putative member a federal class action suit.

Finally, defendant argues that even if tolling is generally available under Virginia law, it is inappropriate here as the class action suit "was a futile, sham class action" in which counsel did not move for class certification during the ten months in which the suit was pending. Def. Rep. at 7; *see* Def. Ex. 11 (docket sheets). Assuming, *arguendo*, the truth of these assertions, they are unavailing, as neither Virginia's tolling statute nor *American Pipe* and progeny admit of exceptions to the tolling rule for futility, let alone for sluggishness. *See, e.g., Crown, Cork & Seal*, 462 U.S. at 353–54.[14] Importantly, defendant appears to concede that plaintiff would have

---

[14] It is worth noting that under the plain language of § 8.01-229(E)(1), it does not matter if class certification is ultimately denied, or if the suit is voluntarily dismissed, or if the suit "for any [other] cause abates or is dismissed without determining the merits." In any of these circumstances, the prior suit tolls the statute of limitations for the full period of time in which the plaintiff is a putative party.

been a class member had class certification ultimately been granted in the prior suit, and indeed, it appears clear that the class definition in the prior suit's complaint—comprising "[a]ll persons who were physically injured as a result of taking Prempro"—would have included plaintiff.[15] Thus, the prior class action suit operated to toll the applicable statute of limitations for the ten-month period between filing and voluntary dismissal. As this tolling period brings all of the alleged claims within § 8.01-243's two-year filing window on the basis of the undisputed facts of this case, defendant's motion for summary judgment must be denied.

IV.

In sum, all of plaintiff's claims except her fraud claim would be time-barred in the absence of a cross-jurisdictional tolling rule applicable to federal class action suits. This is so because only fraud claims are subject to a discovery rule under Virginia law, and the undisputed record reflects that the non-fraud claims accrued prior to two years before filing. Nonetheless, the statute of limitations was tolled for all claims by operation of Virginia Code § 8.01-229(E)(1) as a result of a previously filed class action suit of which plaintiff was a putative class member. Accordingly, defendant's motion for summary judgment on the statute of limitations issue is appropriately denied in all respects.

An appropriate Order shall issue.

Alexandria, Virginia
June 16, 2010

/s/
T. S. Ellis, III
United States District Judge

---

[15] *See Lewers v. Wyeth*, No. 02-4970, at ¶ 37 (N.D. Ill. July 15, 2002) (Complaint).